**UNITED STATES of America,**

v.

**James E. HOWARD, Defendant.**

**No. 1:00–CR–56.**

United States District Court, N.D. New York.

July 9, 2003.

James E. Howard, Fort Washington, MD, Pro se.

Alex Bunin, Esq., Federal Public Defender (Paul J. Evangelista, Esq., Gene Primomo, Esq., Ass't Federal Public Defenders, of Counsel), Albany, NY, for Defendant.

Glenn T. Suddaby, Esq., United States Attorney for the Northern District of New York (Tina E. Sciocchetti, Esq., Robert P. Storch, Esq., Ass't United States Attorneys, of Counsel), Albany, NY, for Plaintiff.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Defendant, James T. Howard ("defendant"), was arrested on September 28, 1999, for falsely assuming and pretending to be an officer and employee acting under the authority of the United States in violation of 18 U.S.C. § 912. He was subsequently indicted on the charges on February 2, 2000. The government dismissed the indictment on May 17, 2000.

On March 4, 2003, defendant filed a pro se motion seeking that all records related to this arrest be expunged. The government filed opposition papers, to which counsel for defendant replied. Oral argument was heard on April 25, 2003, in Albany, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

On February 6, 1999, defendant, a bounty hunter, accompanied a bail Bondswoman named Allison Robinson ("Robinson")

from the state of Maryland to the town of Saranac Lake, in the Northern District of New York. The two sought to apprehend Allison Laprade ("Laprade"), who had failed to appear in Maryland State Court. They had received information which led them to believe that Laprade was residing at an address in Saranac Lake.

After conducting surveillance on the residence, with Robinson in tail, defendant proceeded to approach the door. Wesley Phelps and Matthew French, two college students who were renting the apartment, answered the door. According to their depositions, defendant entered the residence and identified himself as a United States Marshal. Furthermore, Phelps and French stated that defendant threatened them with jail time if they failed to cooperate and admonished them against leaving the apartment. Although Robinson did not hear the defendant identify himself as a Marshal, she did testify that she heard him say the word "Marshal" in conversation with the students. (Docket No. 24, Exhibit A, p. 25). She also testified that defendant was wearing a bulletproof vest and a hat with an emblem similar to that of the U.S. Marshals, inside of which were the words "U.S. Fugitive Recovery." *Id.* at 24. In addition, defendant was wearing a silver badge with a star in the middle of a circle emblazoned with the words "U.S. Bail Enforcement Agent." *Id.* at 25

After some time in the students' apartment, defendant and Robinson determined that Laprade was in a neighboring residence. Laprade was apprehended and prepared for transport back to Maryland. Soon thereafter, the pair was stopped by a New York State trooper. According to Robinson, the officer asked the defendant for identification, which he provided. Robinson testified that the officer responded to the defendant's identification by concluding that he was "federal" and subsequently allowed their car to proceed. *Id.* at 49–50

On February 8, 1999, the two students, Phelps and French, filed complaints against defendant with the Saranac Lake Police Department. As a result of these complaints, an arrest warrant was issued on September 17, 1999. Defendant was indicted for falsely assuming and pretending to be an officer and employee acting under the authority of the United States in violation of 18 U.S.C. § 912.

Following his arrest, defendant filed a motion seeking to suppress evidence provided by the two college students who positively identified Howard from a collection of photographs. While preparing for the suppression hearing, the government found that Phelps and French had used marijuana hours before the defendant arrived at their apartment. Despite Robinson's testimony that the students did not appear "high," (Docket No. 24, Exhibit A, p. 24), the prosecutor felt that the marijuana use compromised the witnesses' credibility. Thus, the government moved to dismiss the indictment, but vehemently maintains that the defendant's arrest was proper and that he is guilty. The government contends that the defendant's indictment was dismissed out of fear that Phelps and French's use of marijuana earlier in the day would undermine their credibility to a jury.

Defendant argues that the dismissal is a reflection of his innocence and seeks to seal or expunge all records related to his arrest. This request is based solely on his fear that efforts to attain a career in law enforcement will be sidelined as a result of this arrest. In a letter to the court seeking expungement, defendant indicated that the applications he has submitted to numerous law enforcement agencies have been met with resistance. In addition to the letter from defendant himself, his attorney has submitted a memorandum supporting the motion to expunge. In this

memo, counsel contends that defendant's arrest was based upon the testimony of two witnesses that the government concedes lacked credibility. Counsel for the defense argues that the testimony of French and Phelps was the lynchpin of the arrest, and because those witnesses lack credibility, defendant's arrest is rendered improper due to lack of probable cause. Therefore, defense counsel advocates expungement of all arrest records in an effort to right this alleged wrong, and to prevent undue bias from tainting what defendant believes is an otherwise promising career in law enforcement.

## III. *DISCUSSION*

▇▇▇ The power to expunge arrest records lies within the discretion of the court. *United States v. Schnitzer,* 567 F.2d 536, 539 (2d Cir.1977). In determining whether to grant a request for expungement, the applicant's stated interest is balanced against the government's interest in retaining and preserving arrest records. As Congress has recognized the value of such records as an essential tool in criminal identification procedures, *see id.* (noting that Congress, through 18 U.S.C. § 534(a), has empowered the Attorney General to acquire, collect, preserve, and exchange arrest records), expungement will only be granted in "extreme circumstances." *Id.*[1]

▇▇▇ Here, defendant argues that his arrest record renders him unable to obtain employment in law enforcement. In support of the argument, however, defendant offers nothing but his own conclusory statements. Such a bare proclamation that an arrest record makes obtaining a job difficult or impossible "has been almost uniformly rejected as a basis for expunge-

ment." *United States v. Melton,* 2001 WL 345217, at 1 (S.D.N.Y. Apr. 9, 2001). *See also United States v. Aigle,* 199 F.Supp.2d 5, 7 (E.D.N.Y.2002); *United States v. Sherman,* 782 F.Supp. 866, 870 (rejecting argument that employment opportunities were curtailed by arrest record where only evidence were various job applications asking a question about convictions and applicant's own belief that it was so.); *United States v. Morelli,* 1999 WL 459784 (S.D.N.Y. June 30, 1999) (rejecting application to expunge misdemeanor conviction on mere speculation that employment opportunities would be foreclosed). This holds true even when a significant amount of time has passed since the conviction which the applicant is seeking to expunge, *see United States v. McFadzean,* 1999 WL 993641 (S.D.N.Y. Nov. 2, 1999) (refusing motion to expunge a seven year old conviction), where the conviction is not only remote in time but for "relatively minor charges," *see United States v. Bryde,* 914 F.Supp. 38 (N.D.N.Y.1996), and even where the applicant was convicted under a now repealed statute. *See United States v. Doe* 935 F.Supp. 478, 480–81 (S.D.N.Y. 1996). It matters not that the arrest in question resulted in an acquittal, a vacated sentence, or as is relevant here, a dismissal of the indictment. *United States v. Rabadi,* 889 F.Supp. 757 (S.D.N.Y.1995); *United States v. Whalen,* 1994 WL 592252 (S.D.N.Y. Oct. 26, 1994). Circumstances such as these do not relieve an applicant of the burden to produce evidence. Defendant has failed to present any evidence to support his fear that he will be hopelessly blacklisted as a result of his record, or to submit any evidence to indicate a causal nexus between his arrest records and his failed employment efforts.

---

**1.** The court in *Schnitzer* noted that the following have been found to be circumstances justifying expungement: 1) situations of mass arrest where an accurate determination of probable cause would be impossible. 2) instances where civil rights workers are arrested for the purpose of harassment. 567 F.2d at 540

■ Therefore, because the equities favor the government, defendant's motion for expungement can only be granted if he demonstrates that his arrest was in some way illegal or unconstitutional. In his reply papers, defendant argues that, without the statements of the witnesses the government later determined had smoked marijuana during the day in question, no probable cause to arrest existed. It is initially noted that the return of an indictment by the grand jury is ordinarily sufficient to demonstrate probable cause. *See Schnitzer*, 567 F.2d at 540 ("The indictment constitutes a finding of probable cause by the grand jurors; the dismissal means only that the prosecutor did not believe he could establish guilt beyond a reasonable doubt"). Further, the government maintains the position that Howard is guilty. The dismissal of defendant's indictment is solely the result of the government's lack of confidence in its' ability to maintain the burden of proof beyond a reasonable doubt, not because defendant was innocent or the victim of wrongful arrest.

■ In any event, there was sufficient probable cause to arrest defendant for impersonating a federal officer. "An officer has probable cause to arrest when he has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir.2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)). Here, there is no evidence presented that the statements given to the police by the two witnesses were not lucid, truthful accounts of what actually occurred. Though it was later determined that French and Phelps had used marijuana earlier during the day of the events in question, their testimony is a legitimate basis for probable cause. By all accounts,

including that of Robinson, defendant's companion, the two students did not appear intoxicated at the time that defendant entered their residence, and there is certainly no evidence of their incompetence at the time they gave their statements. (Docket No. 24, Exhibit A, p. 30). Robinson also testified that defendant was wearing a badge, body armor, and clothes resembling the uniform of a United States Marshal, and that she heard the defendant say the word "Marshal," though she could not be sure of the context. (*Id.* at 24, and 33). That the prosecutor made a tactical decision to dismiss the indictment does not affect the probable cause that prompted it. Thus, since no exceptional circumstances have been demonstrated, and no constitutional infirmity proven, defendant's motion to expunge his arrest record must fail.

## IV. *CONCLUSION*

On balance, defendant has not provided sufficient evidence to supersede the government's interest in the maintenance of arrest records. The assertion that an arrest record will interfere with prospective employment is not an unusual or extreme circumstance warranting expungement, and probable cause for defendant's arrest existed.

Accordingly, it is

ORDERED that defendant James E. Howard's motion requesting expungement of his arrest records is DENIED.

IT IS SO ORDERED.