**UNITED STATES of America**

v.

**Anthony R. MITCHELL, Defendant.**

**No. 1:03cr243.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 22, 2010.

Charles Dlabik, U.S. Attorneys, Alexandria, VA, for United States of America.

Ivan Darnell Davis, Office of the Federal Public Defender, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

T.S. ELLIS, III, District Judge.

This motion for expungement of a criminal conviction presents the question—unresolved in this circuit—whether a district court has statutory or ancillary jurisdiction to expunge a felony conviction to which a defendant pleads guilty from his criminal record based solely on equitable grounds. For the reasons set forth herein, jurisdiction to order expungement on equitable

grounds is lacking and therefore defendant's motion must be denied.

## I.

On May 29, 2003, a federal grand jury returned a one-count indictment charging defendant with devising and intending to devise a scheme and artifice to defraud a financial institution under 18 U.S.C. § 1344. Specifically, defendant was charged with opening an account at the Pentagon Federal Credit Union, depositing a fraudulent check into that account, and thereafter withdrawing funds from the account. Following his arrest on May 1, 2003 by the Pentagon Police, defendant admitted that he had deposited the fraudulent check and that he had committed similar fraudulent and illegal conduct with respect to other bank accounts at various financial institutions since 2001. On July 22, 2003, defendant pled guilty to bank fraud, in violation of 18 U.S.C. § 1344, and agreed to pay restitution in the amount of $22,864.91 to three federal credit unions. On October 3, 2003, defendant was sentenced to a four-month term of imprisonment and a three-year term of supervised release.[1]

On December 29, 2009, defendant sent a letter "in regards to getting this charge expunged from my record," which letter is construed as a motion for expungement of defendant's criminal conviction. Specifically, defendant indicates that since 2003 he has led a law-abiding life and that he was recently offered a full-time position with the Architect of the U.S. Capitol. The human resources department of the Architect of the Capitol, however, has advised defendant that he cannot be employed by the Architect of the Capitol if his criminal record contains a felony conviction. Accordingly, defendant seeks expungement of his felony conviction for bank fraud from his criminal record.

## II.

■ It is appropriate here to begin with first principles of federal court jurisdiction. Federal courts, unlike state courts, are courts of limited jurisdiction with specific jurisdictional requirements and limitations. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)); *Strawn v. AT & T Mobility LLC,* 530 F.3d 293, 296 (4th Cir. 2008) (citation omitted). Accordingly, where, as here, a party seeks to adjudicate a matter in federal court, the party "must demonstrate the federal court's jurisdiction over the matter." *See id.* If a federal court determines that it does not have jurisdiction over a matter, it may not rule on the merits of a case.[2] Fundamentally, the principle that federal courts are courts of limited jurisdiction dictates that federal courts "possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (internal citations omit-

---

**1.** On December 10, 2004, defendant was found to have violated the terms of his supervised release by (i) failing to return a rental vehicle, and (ii) failing to meet his monthly restitution payment obligations. Defendant's supervised release was continued, but he was ordered to serve two weekends in jail. *See United States v. Mitchell,* 1:03cr243 (E.D.Va. Dec. 10, 2004) (Order).

**2.** *See Catawba Indian Tribe v. South Carolina,* 865 F.2d 1444, 1460 (4th Cir.1989) (noting that a federal court has a "fundamental responsibility to insure that we decide only those cases that fall within our lawful authority as a court of limited jurisdiction"); *Goldsmith v. Baltimore,* 845 F.2d 61, 63–64 (4th Cir.1988) ("A federal court must satisfy itself that it has jurisdictional power to rule on the merits of a case.").

ted).[3] There is no dispute that the power to expunge federal criminal convictions solely on equitable grounds is neither explicitly authorized by the Constitution [4] nor statute, yet this does not end the analysis as the question of ancillary jurisdiction must be addressed.

■ Ancillary jurisdiction arises when a district court "acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the full disposition of the matter, may hear collateral proceedings when necessary to allow it to vindicate its role as a tribunal." *See* 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure* § 3523.2, at 213 (3d ed. 2008).[5] In *Kokkonen v. Guardian Life Insurance Co. of America*, the Supreme Court addressed the scope of federal court ancillary jurisdiction, which allows a federal court to entertain "some matters (otherwise beyond their competence) that are incidental to other matters properly before them." 511 U.S. at 378–79, 114 S.Ct. 1673. Ultimately, the Supreme Court concluded that federal courts are permitted to invoke the doctrine of ancillary jurisdiction only in two specific circumstances:

> (i) "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent"; and
>
> (ii) "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority and effectuate its decrees."

*Id.* at 379–80, 114 S.Ct. 1673 (citations omitted).[6]

---

**3.** Academics have engaged in a spirited debate over Congress's power to control lower federal court jurisdiction. Indeed, Professor Hart's famous Dialogue addresses this precise issue. *See* Henry M. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialect,* 66 Harv. L.Rev. 1362 (1953). Ultimately, four views have emerged: (i) that lower federal courts must be vested with the full judicial power described in Article III; (ii) that Congress may limit lower federal court jurisdiction because the Constitution grants Congress discretion whether to establish the lower federal courts in the first instance; (iii) that the full judicial power as described in Article III must be vested in some federal court, and consequently lower federal courts must exist to hear certain issues over which the Supreme Court does not have original jurisdiction; and (iv) that Congress may limit lower federal court jurisdiction provided that it does not violate other constitutional provisions in doing so. *See* Erwin Chemerinsky, *Constitutional Law* § 2:9:3, at 166–79 (3d ed. 2006). Although no clear consensus has emerged as to these views, the traditional view generally espouses the second argument, namely that Congress has the greater power to create or abolish lower federal courts, and thus necessarily has the lesser power to define lower federal courts' jurisdiction. *See* Peter J. Smith, *Textualism and Jurisdiction,* 108 Colum. L.Rev. 1888, 1892–96 (2008).

**4.** Notably, the Constitution states that the "President ... shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment." U.S. Const. art II, § 2.

**5.** Examples of federal courts' exercise of ancillary jurisdiction include the award of costs and attorneys fees in both civil and criminal cases, and the issuance of injunctions to effectuate court orders or to preserve the status quo pending resolution of a claim. *See* 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3523.2, at 214–17, 219; *see also United States v. Coloian,* 480 F.3d 47, 51 n. 5 (1st Cir.2007) (listing examples).

**6.** In *Kokkonen,* the petitioner attempted to invoke ancillary jurisdiction as a basis for its federal court action to enforce a settlement agreement. The petitioner argued that ancillary jurisdiction was proper because the parties had previously litigated a breach of an agency agreement before the federal court, which litigation had resulted in a stipulation of dismissal pursuant to Rule 41, Fed.R.Civ. P., and the settlement agreement at issue. The Supreme Court disagreed and held that ancillary jurisdiction was not proper: "The facts to be determined with regard to such alleged breaches of [the settlement agreement] are quite separate from the facts to be determined in the principal suit, and automat-

Neither the Supreme Court nor the Fourth Circuit has directly addressed whether federal courts have jurisdiction to expunge criminal convictions solely for equitable reasons.[7] At most, the Fourth Circuit has held in *Allen v. Webster* that a district court did not abuse its equitable discretion in denying a defendant's request for expungement of his arrest and acquittal by a jury for the possession and manufacture of heroin. 742 F.2d 153, 154–55 (4th Cir.1984).[8] Specifically, the Fourth Circuit reasoned that expungement was not warranted because the defendant had not pursued seemingly available administrative relief, namely to "insure himself that the 'derogatory' information was not considered in connection with reviewing his job application." *Id.* at 154. Significantly, the panel, quoting the Second Circuit's decision in *United States v. Schnitzer*, noted that the expungement remedy is "confined to 'exceptional circumstances,'" such as

> "where procedures of mass arrests rendered judicial determination of probable cause impossible; where the court determined the sole purpose of the arrests

was to harass civil rights workers; where the police misused police records to the detriment of the defendant; or where the arrest was proper but was based on a statute later declared unconstitutional."

*Id.* (quoting *United States v. Schnitzer*, 567 F.2d 536, 539–40 (2d Cir.1977)) (internal citations omitted).

*Allen* therefore does not squarely address the jurisdictional question presented here and, moreover, is factually distinguishable. *Allen* involves expungement of a criminal arrest and acquittal record, whereas defendant here seeks expungement of a conviction. In short, *Allen* does not resolve the antecedent, indispensable issue whether a federal court has jurisdiction to entertain a motion for expungement solely for equitable reasons, particularly in light of *Kokkonen*.

Courts of Appeals outside the Fourth Circuit are split on whether federal courts have the power to expunge criminal records and convictions solely on equitable grounds.[9] Specifically, the Second, Seventh, Tenth, and D.C. Circuits have con-

---

ic jurisdiction over such contracts is in no way essential to the conduct of federal-court business." 511 U.S. at 381, 114 S.Ct. 1673.

**7.** The Supreme Court recently declined review in two cases that presented this jurisdictional issue. *See Coloian v. United States*, 552 U.S. 948, 128 S.Ct. 377, 169 L.Ed.2d 260 (2007) (mem.), *denying cert. to* 480 F.3d 47 (1st Cir.2007) (finding no jurisdiction); *Rowlands v. United States*, 549 U.S. 1032, 127 S.Ct. 598, 166 L.Ed.2d 431 (2006) (mem.), *denying cert. to* 451 F.3d 173 (3d Cir.2006) (same).

**8.** Similarly, the Fourth Circuit in *Bloodgood v. Garraghty* declined to expunge a defendant's prior convictions from his file. *See* 783 F.2d 470, 475–76 (4th Cir.1986) ("[W]e believe this court should be hesitant to entertain general actions for expungement of allegedly erroneous convictions apart from the customary avenues of collateral attack. There also

exists no justification for rehashing the merits of these allegedly infirm convictions where there is no showing that the Parole Board relied upon them."). The unanimous panel did not, however, address the jurisdictional question.

**9.** *See generally* Fruqan Mouzon, *Forgive Us Our Trespasses: The Need for Federal Expungement Legislation*, 39 U. Mem. L. Rev. 1, 26–31 (2008) (discussing debate and circuit split); 13 Wright et al., *Federal Practice and Procedure* § 3523.2, at 218–19 (same). Notably, many state statutes cloak state courts with the power to expunge state criminal convictions, although these state statutes do not provide federal courts with jurisdiction to order such relief. *See generally* Mouzon, *supra*, at 31–34 ("Forty-five states, plus the District of Columbia, provide relief for some ex-offenders from the bondages attached to having a criminal history, either through expungement or other similar relief.").

cluded that federal courts have such power.[10] Notably, however, the Second, Tenth, and D.C. Circuits' decisions predate the Supreme Court's narrowing of the scope of ancillary jurisdiction in *Kokkonen*, and the Seventh Circuit's post-*Kokkonen* decision does not discuss *Kokkonen*'s implications. Instead, the Seventh Circuit relies on a distinction drawn in a prior pre-*Kokkonen* decision between expungement of executive branch records and expungement of judicial branch records, and confirmed that while courts have no jurisdiction to direct entities such as the Federal Bureau of Investigation to expunge criminal records, "[the court's] inherent power extends to the management of judicial business" and therefore allows for the expungement of judicial records based solely on equitable grounds. *See United States v. Janik*, 10 F.3d 470, 472–73 (7th Cir. 1993), *cited in United States v. Flowers*,

389 F.3d 737, 738–40 (7th Cir.2004). That these decisions rely on "inherent jurisdiction" or an expansive notion of ancillary jurisdiction rejected by the Supreme Court in *Kokkonen* calls into question their continuing validity. *See Kokkonen*, 511 U.S. at 380, 114 S.Ct. 1673 (finding that none of the Supreme Court's precedents "has, for purposes of asserting otherwise nonexistent federal jurisdiction, relied upon a relationship so tenuous as the breach of an agreement that produced the dismissal of an earlier federal suit").[11]

By comparison, the First, Third, Eighth, and Ninth Circuits have concluded, based on the Supreme Court's holding in *Kokkonen*, that federal courts lack jurisdiction to expunge criminal records solely for equitable considerations.[12] As the First Circuit summarized in the most recent of these decisions, "[t]hese circuits have rejected the notion that a federal court's jurisdic-

10. *See United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir.1977); *United States v. Flowers*, 389 F.3d 737, 739–40 (7th Cir.2004); *United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir.1993), *clarifying United States v. Friesen*, 853 F.2d 816 (10th Cir.1988); *Livingston v. U.S. Dep't of Justice*, 759 F.2d 74, 78 (D.C.Cir. 1985). Notably, the Tenth Circuit in Pinto explicitly stated that a federal court could order expungement for an acquittal, but not for a valid conviction because "there is a large difference between expunging the arrest record of a presumably innocent person, and expunging the conviction of a person adjudged as guilty in a court of law." 1 F.3d at 1070. The Second, Seventh, and D.C. Circuit decisions do not distinguish between arrests and convictions for purposes of expungement.

11. Likewise, although district courts in the Fourth Circuit—including this Court in *United States v. Van Wagner* and *United States v. Salleh*—have expunged criminal records in certain cases or have recognized their inherent power to order such relief, these decisions either (i) predate *Kokkonen*, (ii) involve a defendant arrested and acquitted, not convicted, of a criminal violation, or (iii) did not address the jurisdictional issue or rely on inherent equitable power. *See United States v. Chester*,

2009 WL 943633, 2009 U.S. Dist. LEXIS 29444 (D.Md. Apr. 6, 2009); *United States v. Steelwright*, 179 F.Supp.2d 567 (D.Md.2002); *United States v. Salleh*, 863 F.Supp. 283 (E.D.Va.1994) (Ellis, J.) (recognizing, yet declining to exercise, "inherent equitable power" to order expungement in pre-*Kokkonen* decision); *United States v. Van Wagner*, 746 F.Supp. 619 (E.D.Va.1990) (Ellis, J.) (ordering expungement of criminal arrest record in pre-*Kokkonen* decision under *Allen*'s "exceptional circumstances" test); *United States v. Stromick*, 710 F.Supp. 613 (D.Md.1989); *Hearn v. Hudson*, 549 F.Supp. 949, 957–58 (W.D.Va.1982). But see *United States v. Sessions*, 2006 U.S. Dist. LEXIS 76647 (D.S.C. Oct. 16, 2007) (finding no jurisdiction to expunge); *United States v. Pence*, 2006 WL 3091091, 2006 U.S. Dist. LEXIS 78485 (W.D.Va. Oct. 27, 2006) (same); *United States v. Gary*, 206 F.Supp.2d 741 (D.Md.2002) (finding no jurisdiction to expunge solely on equitable grounds).

12. *See United States v. Coloian*, 480 F.3d 47, 50–52 (1st Cir.2007); *United States v. Rowlands*, 451 F.3d 173, 176–79 (3d Cir.2006); *United States v. Meyer*, 439 F.3d 855, 859–62 (8th Cir.2006); *United States v. Sumner*, 226 F.3d 1005, 1010–15 (9th Cir.2000).

tion under either § 3231 or its 'inherent power' provides ancillary jurisdiction over equitable orders to expunge because such orders do not fit within *Kokkonen's* purposes for ancillary jurisdiction." *United States v. Coloian,* 480 F.3d 47, 51 (1st Cir.2007). More precisely, the First Circuit initially concluded that it lacked original jurisdiction to consider a motion for expungement on equitable grounds. Although 18 U.S.C. § 3231 provides district courts with original jurisdiction "of all offenses against the laws of the United States," a district court's jurisdiction under this statutory provision ends once the judgment of conviction is entered. *See id.* at 50. Accordingly, the First Circuit turned to ancillary jurisdiction as a basis for considering the motion to expunge and concluded, based on *Kokkonen,* that "the original claims brought before the district court in this case have nothing to do with the equitable grounds upon which Coloian seeks expungement" and that "[t]he existence of Coloian's criminal records do not frustrate or defeat his acquittal." *Id.* at 52. Accordingly, the motion for expungement was dismissed because neither rationale for applying ancillary jurisdiction was satisfied.

■ The reasoning of the First, Third, Eighth, and Ninth Circuits is persuasive. To begin with, as these circuits have recognized, defendant here cannot claim jurisdiction under 18 U.S.C. § 3231 because the act of entering judgment of conviction in defendant's criminal case divests a district court of original jurisdiction over defendant's case.[13] Moreover, it is clear that Congress has not directly provided federal district courts with jurisdiction to expunge criminal convictions solely for equitable reasons. Indeed, the absence of explicit jurisdictional authorization is notable in light of Congress's decision to provide for an expungement remedy in other narrowly and specifically defined circumstances not applicable here.[14]

■ Additionally, the facts and circumstances with respect to defendant's motion for expungement do not support the invocation of ancillary jurisdiction. First, ancillary jurisdiction is not proper because there is no factual interdependency between the claim over which the district court properly had jurisdiction, namely defendant's criminal conviction under 18 U.S.C. § 3231, and defendant's ancillary claim to expungement relief. *See Coloian,*

---

**13.** *See United States v. Breeden,* 366 F.3d 369, 372 (4th Cir.2004) ("Appellate jurisdiction is generally governed by 28 U.S.C.A. § 1291 (West 1993), which provides that the courts of appeals 'shall have jurisdiction of appeals from all final decisions of the district courts of the United States.' ... [F]inality comes with the conviction and imposition of sentence." (citations and quotation marks omitted)). Of course, a district court may continue to resolve ancillary matters following entry of a conviction, such as the return of seized property, because such activities "enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen,* 511 U.S. at 380, 114 S.Ct. 1673; *see also United States v. Minor,* 228 F.3d 352, 356 n. 3 (4th Cir.2000) ("A criminal defendant may move pursuant to [Fed.R.Crim.P.] 41(e) for return of property

seized in his criminal case even after the close of trial." (citing *United States v. Garcia,* 65 F.3d 17, 20 (4th Cir.1995))).

**14.** *See, e.g.,* 10 U.S.C. § 1565(e) ("The Secretary of Defense shall promptly expunge ... the DNA analysis of a person ... if the Secretary receives, for each conviction of the person of a qualifying offense, a certified copy of a final court order establishing that such conviction has been overturned."); 18 U.S.C. § 3607 (providing that if a person found guilty of violating § 404 of the Controlled Substances Act is placed on pre-judgment probation and is under twenty-one years of age at the time of the offense, "the court shall enter an expungement order upon the application of such person"); *Coloian,* 480 F.3d at 49 n. 4 (listing statutes).

480 F.3d at 52. The facts relating to defendant's conviction are wholly separate and distinct from the equitable circumstances that defendant contends justify the expungement of his criminal conviction for bank fraud. Furthermore, in this case, expungement of defendant's criminal conviction does not facilitate the functioning of the federal court, "that is to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 380, 114 S.Ct. 1673. To the contrary, defendant's criminal conviction provides a ready, publicly accessible record of his criminal conviction for federal bank fraud and his punishment for that offense, all of which importantly remain a part of the public record.[15] Indeed, a conclusion that federal courts have ancillary jurisdiction to expunge criminal convictions for equitable reasons would allow district courts across the country to develop possibly inconsistent equitable standards for ordering expungement. This in turn might result in the expungement of criminal records in some districts and the denial of expungement in other districts, leading to an impairment of the reliability and integrity of federal criminal conviction records.

### III.

In sum, federal courts are courts of limited jurisdiction; they may not adjudicate matters where there is no explicit constitutional or statutory grant of jurisdiction, or where there is no properly limited ancillary jurisdiction. It is clear that neither the Constitution, nor statute, nor any claim of properly limited ancillary jurisdiction applies to federal courts' expungement of criminal convictions solely on equitable grounds. Accordingly, defendant's motion for expungement must be denied.[16]

An appropriate Order will issue.

---

15. *See Richmond Newspapers v. Virginia*, 448 U.S. 555, 578, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ("[A] trial courtroom also is a public place where the people generally—and representatives of the media—have a right to be present, and where their presence historically has been thought to enhance the integrity and quality of what takes place."); *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) ("[W]hile a district court 'has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests,' the 'presumption' in such cases favors public access." (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir.1984)));

*United States v. Lindh*, 227 F.Supp.2d 565, 574 (E.D.Va.2002) ("The Court will thereafter determine which portions, if not all portions, of this pleading will be made a part of the public record.... [T]he public has a presumptive right to know whether the government believes that defendant's cooperation has been 'full, complete and truthful,' as required by the Plea Agreement.").

16. It is worth noting that although there is no jurisdiction to expunge his conviction, defendant is not without a remedy; he may, if he chooses, seek a presidential pardon pursuant to 28 C.F.R. § 1.1.